UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| FRED TALARICO, | ) |  |
|---|---|---|
| *Plaintiff*, | ) |  |
| v. | ) | No. 3:24-cv-00475-MJD |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
| *Defendant*. | ) |  |

## MEMORANDUM AND ORDER

Plaintiff Fred Talarico ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his disability insurance benefits ("DIB") and supplemental security income ("SSI") [Doc. 1]. Plaintiff filed a Motion for Summary Judgment[1] and Memorandum in Support on February 27, 2025 [Doc. 9, Doc. 10]. The Commissioner filed his responsive brief on March 13, 2025 [Doc. 12]. Plaintiff filed a reply brief on March 27, 2025 [Doc. 13]. This matter is, therefore, ripe for review. For the reasons stated below, Plaintiff's request for relief [Docs. 1, 9] will be **DENIED**, and the Commissioner's request that the administrative law judge's final decision denying benefits be affirmed [Doc. 12] will be **GRANTED**.

### I. ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 7 ("Tr.")], Plaintiff filed his application for DIB and SSI benefits in August of 2021 (Tr. 82, 131–133, 205–212). Plaintiff's claims were denied initially and on reconsideration at the agency level (Tr. 135–43; 147–152). Plaintiff requested a

---

[1] Plaintiff's filings are styled as a motion for summary judgment with a supporting memorandum, consistent with the practice prior to the effective date of the new Supplemental Rules.

hearing before an administrative law judge ("ALJ") (Tr. 154–156). Said hearing was conducted in person on October 24, 2023 (Tr. 32–54).

On December 8, 2023, the ALJ found Plaintiff had not been under a disability, as defined in the Social Security Act, at any time between his alleged onset of disability date (August 4, 2021) and the date of the ALJ's decision (December 8, 2023) (Tr. 26). The ALJ found that Plaintiff was not disabled for purposes of his DIB and SSI claims (Tr. 26). The Appeals Council denied Plaintiff's request for review on September 25, 2024 (Tr. 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action on November 26, 2024 [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on July 11, 1968 (Tr. 61) and was 53 years old on the alleged onset of disability date (August 4, 2021), which is defined as an individual "closely approaching advanced age." 20 C.F.R. §§ 404.1563 and 416.963. Plaintiff has since changed age category to "advanced age." 20 C.F.R. §§ 404.1563 and 416.963. He completed the 11th grade and has the equivalent of a high school education, having obtained a General Educational Development ("GED") certificate (Tr. 38, 240). Plaintiff can communicate in English (Tr. 131). In the 15 years prior to the alleged onset of his disability, Plaintiff worked as a window and glass tinter (Tr. 38–39). According to the Dictionary of Occupational Titles ("DOT"), this is a skilled occupation with a medium level of exertion required, as generally and actually performed (Tr. 24).

B.  **Medical Records**

In his initial August 2021 Adult Disability Report, Plaintiff alleged disability due to a stroke, listing the following conditions that limited his ability to work:

1. No use of right arm
2. Right foot is positioned outward and limps
3. No short term memory
4. Thoughts are there in head – but can't find words
5. Speech is slower
6. Swallowing is hard
7. Limited energy. Tire easily. I nap about every 2 hrs
8. Depression

(Tr. 239–243). While there is no need to summarize all the medical records herein, the Court has reviewed all relevant records.

C.  **Hearing Testimony**

At the hearing held on October 24, 2023 (the "Hearing"), Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by Attorney Emma Webb, the same lawyer who represents Plaintiff in this action. The Court has carefully reviewed the transcript of the Hearing (Tr. 32–54).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

A.  **Eligibility**

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

3

his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

4

**B.     The ALJ's Findings**

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026 (Tr. 19). At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 4, 2021, the alleged onset of disability date (*Id.*). At step two, the ALJ found Plaintiff had the following severe impairments: "vascular insult to the brain, abnormality of the right upper extremity, neurocognitive disorder, and major depressive disorder" (*Id.*). The ALJ also found that Plaintiff's speech impairment was non-severe, as he was able to communicate with his family members and medical providers (*Id.* at 20).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*). The ALJ also found that Plaintiff's mental impairments, considered singly and in combination via "Paragraph B" criteria, did not meet or medically equal the criteria of listings 12.02 and 12.04, which would require one extreme limitation or two marked limitations. (*Id.*) The ALJ found Plaintiff had a moderate limitation with regard to remembering or applying information; a moderate limitation with regard to interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation for adapting or managing himself (Tr. 20–21). The ALJ also considered "Paragraph C" criteria and determined that the evidence failed to establish the presence of a mental disorder that qualified (Tr. 21).

Next, taking this information into consideration, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), with the following additional limitations:

5

- No more than frequent pulling with the right upper extremity;
- [No more than] frequent climbing ladders, ropes, and/or scaffolds;
- [No more than] frequent reaching in all directions with the right upper extremity;
- Cannot perform work at high exposed places;
- Cannot perform work in proximity to moving mechanical parts;
- Limited to work with repetitive non-detailed tasks where co-worker and public contact would be casual and superficial (no more than occasional) supervision direct and non-confrontational;
- Changes in the workplace should be infrequent

(Tr. 21) (formatted for clarity).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work pursuant to 20 C.F.R. §§ 404.1565 and 416.965 (Tr. 24). At step five, the ALJ found there were jobs existing in significant numbers in the national economy available to a person with Plaintiff's RFC, including jobs as a hospital cleaner, laundry worker, and industrial cleaner (Tr. 25).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between his alleged onset of disability date and the date of the ALJ's decision (Tr. 26).

## IV. ANALYSIS

Plaintiff argues the ALJ's decision is not supported by substantial evidence. As a result, he argues the decision should be reversed and remanded for further administrative proceedings [Doc. 10 at Page ID # 983]. Plaintiff asserts this relief is justified due to the following alleged errors:

1. The ALJ did not account for Plaintiff's physical limitations in the RFC.

2. The ALJ's finding that Plaintiff can learn work that involves "repetitive, non-detailed tasks" is unsupported by substantial evidence.

[Doc. 10 at Page ID # 980–82].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102–103 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

A court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). A court may not,

7

however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived). And arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

  **B.** **Residual Functional Capacity ("RFC")**

A claimant's RFC is the most they can do—not the least—despite their impairments. 20 C.F.R. § 404.1545(a)(1); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ develops the RFC based on all relevant evidence, including the claimant's subjective statements about his limitations and medical opinion evidence. *See* 20 C.F.R. §§ 404.1592, 404.1545.

  i. <u>The ALJ's Evaluation of Plaintiff's Physical Limitations</u>

With regard to Plaintiff's physical condition, the ALJ made the following determinations based on his review of the record, as pertinent here:

> The claimant suffered a cerebrovascular accident (stroke) in August 2021. (See Exhibit 1F, p. 9). He was evaluated in the emergency room for headache, right eye deviation, and slurred speech. (See Exhibit 1F, p. 9). Brain imaging revealed acute infarction within the left ventral thalamus/posterior margin of the posterior limb of the left internal capsule. See Exhibit 1F, p. 96). The claimant was hospitalized for four days. (See Exhibit 1F, p. 96). The claimant underwent neurological care and rehabilitation for four months following his stroke. (See Exhibits 4F and 5F). The claimant's neurology follow-up care showed that he was prescribed daily aspirin and the etiology of his infarction was noted to be small-vessel disease. (See Exhibit 7F, p. 14). In April 2022, the claimant was evaluated by his primary care provider for weakness in his right upper extremity. (See Exhibit 8F, p. 8). In December 2022, the claimant was evaluated by [his] primary care provider, and he had right shoulder pain and right-sided weakness, and he had right hemiplegia and clumsy alternating movements. (See Exhibit 11F, pp. 1 and 2). The claimant's blood pressure is noted to be stable with medication, and regular check-ups are necessary as part of his stroke prevention treatment regimen. (See Exhibit 16F, p. 3). The claimant continues to receive physical therapy for his right-sided weakness. (See Exhibits 14F and 15F). Brain imaging, dated June 2023, revealed old left basal ganglia infarcts. (See Exhibit 21F, p. 2).

(Tr. 22). The ALJ then made the following determination:

> After careful consideration of the evidence, the undersigned finds that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 22–23).

In support of the physical limitations set forth in the RFC, the ALJ discussed the medical opinions of the state agency medical consultants Dr. Larry McNeil and James Lewis and adopted RFC limitations that were *more* restrictive than what they recommended (Tr. 21, 23). The ALJ found unpersuasive the opinion of state agency medical consultant James Lewis that Plaintiff's physical impairments were not severe, finding instead that Plaintiff "does have severe physical impairments regarding his upper right extremity and residual symptoms of his stroke" (Tr. 23). The other state agency medical consultant, Dr. McNeil, opined that Plaintiff should be limited to medium work with frequent climbing ladders, ropes, and/or scaffolds and frequent right reaching

9

(Tr. 23, 66–69). The ALJ found Dr. McNeil's opinion to be partially persuasive, noting that "the claimant has environmental restrictions, as provided in the decisional residual functional capacity due to his residual stroke symptoms." (Tr. 23). The ALJ adopted Dr. McNeil's findings that Plaintiff be limited to (1) no more than frequent pulling with the right upper extremity; (2) [no more than] frequent climbing ladders, ropes, and/or scaffolds; and (3) [no more than] frequent reaching in all directions with the right upper extremity (Tr. 21, 66–69). The ALJ then *added* the following limitations: "no performance of work at high exposed places" and "no performance of work in proximity to moving mechanical parts" (Tr. 21).

The ALJ also considered Plaintiff's wife's third-party report and Plaintiff's allegations, including his testimony that "he continues to have weakness on his right side due to stroke" and "[h]e has problems writing and using a toothbrush" (Tr. 22–24). Ultimately, the ALJ found as follows:

> As to the claimant's allegations, while his impairments are severe, they are not disabling. The undersigned has considered that the claimant's subjective complaints of disabling limitations are disproportionate to the objective clinical and diagnostic medical evidence. That is, clinical and diagnostic records fail to document any abnormality, which could reasonably be expected to result in the degree of limitations alleged. Regulatory criteria require that impairments must be established by objective medical evidence consisting of signs, symptoms, radiological reports, and laboratory findings, not merely by a claimant's statement of symptoms.

(Tr. 24).

On appeal, Plaintiff argues that the ALJ failed to properly consider Plaintiff's manipulative limitations, balance limitations, and standing/walking limitations in the RFC. In sum, and for the reasons set forth herein, the Court finds that the limitations set forth in the RFC are based on substantial evidence and that Plaintiff's set of arguments amounts to a request for this Court to reweigh the evidence, which is impermissible. *See Garner*, 745 F.2d at 387.

Manipulative limitations

Plaintiff argues that the ALJ failed to account for Plaintiff's manipulative limitations, but the ALJ clearly considered the medical records, to include rehabilitation and physical therapy records (Tr. 22 (citing Exhibits 4F, 5F, 14F, 15F)). The ALJ specifically addressed manipulative limitations in the decision, finding "abnormality of the right upper extremity" to be a severe impairment and noting Plaintiff was evaluated for "weakness in his right upper extremity" and "right-sided weakness" (Tr. 19, 22). The ALJ also made note that Plaintiff testified that "he continues to have weakness on his right side due to stroke" and "[h]e has problems writing and using a toothbrush" (Tr. 22). And, manipulative limitations were then reflected in the RFC, as the ALJ limited Plaintiff to frequent, rather than constant or unlimited, pulling and reaching with the right upper extremity (Tr. 21). These limitations were identical to the limitations proposed by state agency consultant, Dr. McNeil (Tr. 66–69).

Plaintiff appears to argue that some medical records suggest that the manipulative limitations were more "extensive" than the ALJ acknowledged [Doc. 10 at Page ID # 980]. This, however, amounts to a request for this Court to reweigh the evidence, which is impermissible. *See Garner*, 745 F.2d at 387. Furthermore, the "extensive" records upon which Plaintiff relies are largely comprised of Plaintiff's subjective reports of right shoulder pain and right-sided weakness,[2] generalized findings of some shoulder pain and right-sided weakness (Tr. 598, 601, 685) and physical therapy records (Tr. 496–98, 500, 509, 511, 711, 714, 737, 753, 780, 786, 809–11, 816)—

---

[2] To the degree that Plaintiff relies on a series of subjective complaints unsupported by objective medical evidence, "ALJ's are not required to accept a plaintiff's subjective complaints as support for a more restrictive RFC." *Jones v. Comm'r of Soc. Sec.*, No. 20-11851, 2021 WL 4205061 at *4 (E.D. Mich. June 30, 2021), adopted 2021 WL 3629897 (E.D. Mich. Aug. 17, 2021) (internal citations omitted).

11

which, as pointed out by the Commissioner in detail, demonstrate some improvement in these conditions over time [Doc. 12 at Page ID# 991–992].³

Balance limitations

Similarly, Plaintiff argues that the ALJ failed to account for Plaintiff's balance limitations. However, the ALJ clearly considered this condition in the decision, noting Plaintiff was evaluated for "clumsy alternative movements" (Tr. 22). And, balance limitations were included in the RFC, as the Commissioner noted "No performance of work at high exposed places" and "No performance of work in proximity to moving mechanical parts" (Tr. 21). Again, these limitations were *more* restrictive than those put forth by the state agency consultant, Dr. McNeil (Tr. 23, 61–70). And, "[c]ourts in this circuit have routinely found RFC assessments that are more restrictive than the opinion evidence to be supported by substantial evidence." *Jones*, 2021 WL 4205061 at *4 (citing *Drinkwine v. Comm'r of Soc. Sec.*, No. 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019); *Chess v. Berryhill*, No. 2:17-cv-163, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019)).

Plaintiff argues that objective evidence supports his claim that his balance limitations are well documented and, *inter alia*, that the ALJ did not consider such documentation. However, the documents Plaintiff relies on, again, are largely comprised of Plaintiff's subjective reports (Tr.

---

³ The Commissioner also notes that the only follow up treatment advised for the manipulative limitations was physical therapy and steroid injections—noting that a "conservative treatment approach suggests the absence of a disabling condition." *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013); *see also Runk v. Comm'r of Soc. Sec.*, No. 09-12893, 2010 WL 3905241, at *3 (E.D. Mich. Sept. 30, 2010) (noting that treatment with steroid injections and physical therapy was "relatively conservative treatment"). In addition, as pointed out by the Commissioner, Plaintiff reported in July 2023 that he was able to play pickleball (Tr. 886), which involves greater manipulative abilities than alleged.

809)[4] and physical therapy records (Tr. 496–97, 509, 511, 727–29, 734–36, 749, 753, 759, 767, 780) that demonstrate some functional improvement over time (*See* Tr. 750 (noting "improved endurance and improved static/dynamic balance"); Tr. 759 (noting "improvement in coordination, balance, and LE strength"); Tr. 767 (noting "improvement in coordination, balance, and agility"). And, the ALJ considered this documentation as he references rehabilitation and physical therapy records in his decision (Tr. 22 (citing Exhibits 4F, 5F, 14F, 15F)). Again, this argument amounts to a request for this Court to reweigh the evidence, which is impermissible. *See Garner*, 745 F.2d at 387.

Standing/Walking limitations

Plaintiff also argues that the ALJ's finding that Plaintiff can perform medium work is not based on substantial evidence given that he "cannot stand and walk unimpaired for the better part of a workday." [Doc. 10 at Page ID # 981]. The ALJ's decision that Plaintiff could perform medium work is supported by substantial evidence, to include the objective medical findings of the state agency consultant, Dr. McNeil (Tr. 69). Further, and again, the documents upon which Plaintiff relies are largely comprised of subjective complaints[5] and physical therapy records (Tr. 496–97, 500, 727–729, 734–736, 753, 780).[6] Other examinations in the record, however, indicate that Plaintiff's gait was normal (Tr. 591, 602, 606, 680) and that Plaintiff had no limitations with regard to walking (Tr. 788). And, the ALJ considered Plaintiff's physical therapy records as he references those records in his decision (Tr. 22 (citing Exhibits 4F, 5F, 14F, 15F)). Plaintiff's

---

[4] *See supra* note 2.
[5] *See supra* note 2.
[6] As pointed out by the Commissioner, other examinations during the relevant period note that Plaintiff's gait was normal (Tr. 591, 602, 606, 680).

13

contention, therefore, amounts to a request for this Court to reweigh the evidence, which is impermissible. *See Garner*, 745 F.2d at 387.

With regard to the physical limitations in the RFC, the Court finds that such limitations are based on substantial evidence and that Plaintiff's set of arguments regarding manipulative limitations, balance limitations, and standing/walking limitations amount to a request for this Court to reweigh the evidence, which is impermissible. *See Garner*, 745 F.2d at 387.

> ii. The ALJ's Findings That Plaintiff Will be Limited to Work That Involves "Repetitive Non-Detailed Tasks"

With regard to Plaintiff's mental impairments, the ALJ considered medical opinions from several providers, citing to reports by Morgan Adams, LMSW; Dr. Malcolm Spica; Dr. Kathryn Steele, Dr. Kathryn Smith, and two state agency consultants–Dr. Jenaan Khaleeli and Dr. Derek O'Brien[7] (Tr. 23–24). The ALJ discussed Dr. Smith's mental examination of Plaintiff and resulting opinion that Plaintiff "has no limitation in understanding, mild to moderate limitation in concentration, and mild to moderate limitation in adaptation" (Tr. 575). The ALJ found this opinion to be partially persuasive but determined that Plaintiff was *more* limited "as the claimant's cognitive disabilities related to his stroke, cause moderate limitation in *all four functional domains*" under Paragraph B (Tr. 23).

The ALJ also discussed the opinions of state agency consultants Dr. Jenaan Khaleeli and Dr. Derek O'Brien (Tr. 24). Pertinent here, Dr. Khaleeli opined that the Plaintiff "can understand and remember simple and low-level detailed instructions" and "can complete simple and low-level

---

[7] As pointed out by the Commissioner in the response brief, Plaintiff argues that the only evidence that supports the ALJ's findings regarding Plaintiff's ability to learn repetitive unskilled tasks—the state agency psychologist findings—is somehow insufficient [Doc. 10 at Page ID # 981–82]. However, such consultants are "highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act." SSR 17-2p, 2017 WL 3928306, at *3 (March 27, 2017).

14

detailed tasks" (Tr. 68). Dr. O'Brien opined that Plaintiff "has the ability to understand and remember simple and detailed instructions" and "has the ability to maintain attention and concentration on simple and detailed tasks for extended periods over two hours duration" (Tr. 101). The ALJ found these opinions to be partially persuasive, finding that "[Plaintiff's] cognitive difficulties limit him to non-detailed tasks" (Tr. 24). The ALJ then made a *more* restrictive finding in the RFC: that Plaintiff be "limited to work with repetitive non-detailed tasks" (rather than low-level detailed tasks) (Tr. 21). And, "[c]ourts in this circuit have routinely found RFC assessments that are more restrictive than the opinion evidence to be supported by substantial evidence." *Jones*, 2021 WL 4205061 at *4 (citing *Drinkwine v. Comm'r of Soc. Sec.*, No. 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019); *Chess v. Berryhill*, No. 2:17-cv-163, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019)).

Plaintiff argues that, by making this finding, the ALJ failed to adequately address his difficulty in learning new tasks as a result of his stroke and failed to evaluate the intensity and persistence of his alleged symptoms [Doc. 10 at Page ID # 982]. However, the Court finds that Plaintiff's contention amounts to a request for this Court to reweigh the evidence, which is impermissible. *See Garner*, 745 F.2d at 387. For example, Plaintiff cites to Dr. Steele's report for the proposition that Plaintiff's ability to learn to new tasks was limited [Doc. 10 at Page ID # 981; Tr. 690]. However, the ALJ explicitly considered this report in his opinion (Tr. 23). Moreover, the other parts of the record cited by Plaintiff, which Plaintiff claims the ALJ erroneously overlooked, are largely comprised of subjective reports[8] of memory loss along with speech therapy progress notes (Tr. 816, 884, 888). Plaintiff does cite to one evaluation from a speech-language pathologist (Tr. 661, 664). However, this evaluation actually supports the ALJ's decision: finding that Plaintiff

---

[8] *See supra* note 2.

had "significant difficulty with immediate and delayed recall of more complex information and with completion of more complex, multi-process reasoning skills," but he had "adequate immediate recall skills for more simple information" (Tr. 663). While the record indicates that Plaintiff has some difficulty with recall skills, he has only demonstrated significant difficulties with more complex and multi-step tasks.

In sum, the Court finds that the RFC limitation to work that involves "repetitive non-detailed tasks" is based on substantial evidence and that Plaintiff's argument amounts to a request for this Court to reweigh the evidence, which is impermissible. *See Garner*, 745 F.2d at 387. Ultimately, if there is substantial evidence to support the Commissioner's decision, said decision should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith,* 99 F.3d at 782; *Ross*, 440 F.2d at 691.

### C. The ALJ's Decision is Supported by Substantial Evidence

The record and the ALJ's decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all the other evidence in the record to arrive at a well-reasoned RFC. The ALJ also properly relied on the testimony of the VE at steps four and five. In short, the written decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted). Accordingly, the Court concludes the ALJ's decision is supported by substantial evidence and is not inconsistent with applicable authority.

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton*, 246 F.3d at 775, this Court's review is limited to whether the ALJ relied on

evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported his conclusion and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

## V. CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Plaintiff's request for relief [Doc. 1 and Doc. 9] is **DENIED**;

(2) the Commissioner's request that the final decision denying benefits be affirmed [Doc. 12] is **GRANTED**; and

(3) this case is **CLOSED**.

SO ORDERED.

ENTER:

/s/ 
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE